[No. 12532. Department One. July 20, 1915.]

The City of Everett, *Respondent,* v. Charlie Simmons, *Appellant.*[1]

Gaming—Criminal Prosecution—Election — Instructions — Issues Not Presented. Under a general information charging gambling, which admitted of proof of guilt either as owner, employee, or one who played in the game, proof of the accused's direct personal participation in the game in a building leased by him is in the nature of an election; and upon the defense of an alibi, it is error to instruct the jury that they may convict if the accused did conduct or carry on the game "by himself or through any other person;" since there was no issue presented as to the accused's constructive participation and no opportunity to meet such charge.

Same — Criminal Prosecutions — Evidence — Sufficiency. Evidence of a witness that he played poker in defendant's pool room but did not remember seeing defendant present at the time, is insufficient to support a conviction of gambling; as it is as consistent with innocence as guilt.

Criminal Law — Trial — Argumentative Instructions. Upon a prosecution for gambling, supported by evidence of hired detectives, a requested instruction is properly refused as argumentative, where it directs greater care by the jury in weighing the testimony of persons who are interested because of the natural and unavoidable tendency and bias of mind of such persons to construe everything against the accused and disregard everything not supporting their preconceived opinions.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered July 14, 1914, upon a trial

[1]Reported in 150 Pac. 414.

and conviction of violating an ordinance relating to gambling. Reversed.

*Coleman & Fogarty*, for appellant.

*Jesse H. Davis*, for respondent.

CHADWICK, J.—Appellant was convicted of violating the provisions of an ordinance of the city of Everett proscribing gambling games. The charging part of the complaint is as follows: That appellant

"did conduct, deal, play, and carry on a certain game of chance, to wit: poker, the same having been played and operated for checks and chips, then and there being representative of value, to wit: representatives of money, whereby money and other things of value were won and lost, and that said game was played, carried on and conducted in that certain building known as Simmons' Pool Room, &c &c contrary to the form, force and effect of section 1 of Ordinance No. 14 of the City of Everett, &c &c and against the peace and dignity of said city."

It will be seen that the city might have offered proof that appellant was either an owner or proprietor, employee, or one who played in the game. The form of the pleading in these cases has been held to be immaterial. The fact is the material thing. *State v. Preston*, 49 Wash. 298, 95 Pac. 82; *State v. Burns*, 54 Wash. 113, 102 Pac. 886; *State v. Gaasch*, 56 Wash. 381, 105 Pac. 817; *State v. Smith*, 58 Wash. 235, 108 Pac. 618.

The testimony offered on the part of the city was that defendant held the building, in which he conducted a cigar store and pool room with two card rooms partitioned out of the main room, under a written lease. A witness, Rosenthal, testified that he played poker in the place on the day alleged in the complaint, although the time fixed by him does not tally with the time fixed by the principal witnesses, who also say they saw him there and participated in a game with him. Rosenthal says he does not remember to have seen appellant

there at the time. Two witnesses, detectives employed for the purpose of obtaining evidence, testified that one of them sat in a game of poker from about six o'clock in the evening until about nine o'clock; that appellant was the dealer and banker, and, but for a time between eight and nine o'clock, was there all the time conducting the game in person.

The testimony of appellant—and he was sustained in greater or less degree by at least four other witnesses—was that, after going to his place of business about eleven or eleven-thirty o'clock in the forenoon and spending some time there, he left with two others on the two o'clock car for a suburb about four miles distant; that he returned at five-fifteen or five-twenty, a little beyond the time he was accustomed to have his Sunday dinner; that after dinner he and his wife, his brother-in-law, who had been with him all day, a young lady, who was a friend of the family, and two boys, who were guests for dinner but had gone from Everett at the time of the trial and could not be called as witnesses, spent some little time about the house; that about eight o'clock they all walked down to the business part of the town, where they left the two guests, and the four remaining went to the Orpheum theatre; that the "show" lasted until about nine-thirty; that the four then went to the corner of Hewitt avenue and Rockafeller street, from whence Mrs. Simmons and the young lady went home and appellant and his brother-in-law went to appellant's place of business. Appellant testified that he was never at his place of business at the times fixed on Sunday evenings—the gambling is alleged to have occurred on Sunday—that it was his invariable custom to spend Sunday evening with his wife, at home or at a play. There is no testimony tending to show that a game was going on after nine or nine-thirty o'clock in the evening. It will thus be seen that there was a clear-cut issue of fact.

The court instructed the jury generally, among other things, saying:

"You are instructed that if you find from the evidence, beyond a reasonable doubt, as such degree of proof is hereinafter defined to you, that the defendant, Charlie Simmons, did, on the 22nd day of March, 1914, in that certain building known as Simmons' Pool Room and located at No. 2009 Hewitt avenue, in the city of Everett, Snohomish county, Washington, *play, or did conduct and carry on, by himself or through any other person,* a game of cards commonly known as poker, and that said game was played for checks or chips, and that said checks or chips were representatives of value, to wit: representatives of money, and that money or other things of value were won and lost in said game, then you must find the defendant guilty."

We have italicized the parts of this instruction upon which error is predicated.

It was evidently the theory of the trial judge that, although the jury might have a reasonable doubt as to whether defendant was present at the time and place testified to by the detectives, it could nevertheless convict if it found that the offense had been committed by any one acting for appellant, although in his absence.

Counsel for the city relies upon the *Preston* case and the *Gaasch* case. These cases do not touch the issue. Each of them go only to the sufficiency of the information. It is the contention of counsel that, inasmuch as the information charged appellant with *conducting* a game, proof of a game conducted by another under his authority would satisfy the law. We can agree with this, but it is fundamental that proofs must conform to the pleadings.

This court has been liberal in construing complaints in this class of cases. It has permitted the prosecutor to plead everything, and submit proof of any one or all of the things proscribed by the statute, but has never held, nor do we know of any court having ever held, where the state has made a case under one condition of the law, that it can ask a conviction upon another condition, there being no facts to sustain it.

The law does not make the facts of a case. The facts make, or rather invite, the application of some principle of law or an exception to such principle. Having authority to plead generally and prove a specific manner of commission, proof by the city of a direct personal participation in the game was in the nature of an election, and bound it to follow the law applicable to the facts by it submitted. If it were to be held otherwise, it is clear that appellant would be deprived of his defense entirely, and further deprived of an opportunity to meet the charge of constructive participation, an issue upon which he offered no proof whatever and upon which he may have been convicted. Indeed, if he had attempted to meet the charge of conducting the game by the hand of another, under the state of the record, it would have been properly rejected as not responsive.

Men are presumed to be innocent until proven guilty beyond a reasonable doubt, and it may be—in considering the law we are bound to indulge the presumption—had the facts brought appellant within the rule of a constructive violation of the ordinance, that he might have offered testimony to meet the charge. As for instance, that he had no guilty knowledge of the game, that it was carried on in his absence and against his will and direction, and that he had no interest in its results, or that there was in fact no game carried on at all.

While a party may be guilty of the offense charged without direct participation, he cannot be convicted unless the facts warrant the verdict. In the case at bar, the issue is whether the two detectives, or appellant and his witnesses, are telling the truth, for under the city's theory, as developed by its own testimony, appellant cannot be held unless he was there participating. He was there or he was not there. That is all there is to this case under the record that is before us. The testimony of Rosenthal is not sufficient of itself to sustain a conviction. The story he tells is as consistent with innocence as with guilt.

In the case of *State v. Gifford*, 19 Wash. 464, 53 Pac. 709, the court had under consideration a statute changing the rule of the common law as to accessories before the fact, and providing that all such accessories should be thereafter held to be principals and tried and punished as such. It was contended under the statute, now Rem. & Bal. Code, § 2007 (P. C. 135 § 897), that the information was sufficient to sustain a conviction on proof that defendant contributed to the crime as an accessory before the fact, although he had not been charged other than as a principal offender. The facts had not been set out. In the case at bar, under the rule of this court as announced in the cases hereinbefore cited, the state is not required to charge any one of the several possible ways of committing the crime of gambling; but it did not intend to hold, nor does it follow, that a defendant can be found guilty under a general charge unless there be facts upon which to rest the verdict. In this connection we think that the observations of Judge Dunbar in the case cited are pertinent:

"But we do not think it was the intention of the legislature, in the passage of this law, to set a trap for the feet of defendants."

So in this case, we do not think it was the intention of this court in so holding to set a trap for the feet of one charged under a complaint that will admit of an election to prove any one of several ways in which the crime may have been committed. The law of constructive guilt is not in this case, and the instruction should not have been given.

Appellant requested the following instruction:

"The court further instructs the jury that in weighing the testimony greater care should be used by the jury in relation to the testimony of persons who are interested in, or employed to find, evidence against the accused than in other cases, because of the natural and unavoidable tendency and bias of the mind of such persons to construe everything as evidence against the accused, and disregard everything which

does not tend to support their preconceived opinions of the matter in which they are engaged."

The instruction is argumentative and was properly refused under the authority of *State v. Miller*, 72 Wash. 174, 130 Pac. 356.

It is urged that the evidence is not sufficient to sustain a conviction. The record is short and we have read all of it. If a jury believes the testimony of the city's witnesses, the defendant should be convicted. If it should reject their testimony as unworthy, or are not convinced by it beyond a reasonable doubt, appellant should be acquitted.

Reversed and remanded for a new trial.

MORRIS, C. J., MOUNT, PARKER, and HOLCOMB, JJ., concur.