[No. 23459.    Department One.    March 24, 1932.]

THE STATE OF WASHINGTON, *Respondent*, v. JOE
SMILEY, *Appellant*.[1]

[1]Reported in 9 P. (2d) 370.

*Wettrick, Wettrick & Flood* and *Chas. T. Hickey,* for appellant.

*Robert M. Burgunder* and *Cordelia M. Thiel,* for respondent.

PARKER, J.—The defendant, Smiley, was, by information filed in the superior court for King county, charged with being a common gambler, as follows:

"He, said Joe Smiley, in the county of King, state of Washington, on or about the 2nd day of May A. D., 1931, wilfully, unlawfully and feloniously did open up, conduct, carry on and operate as owner, agent, dealer, clerk and employee, in that certain building known as 172 Washington street, in the city of Seattle, said county and state, a gambling game and game of chance commonly known as poker played with cards, whereby money and its representative thereof, was then and there bet, wagered and hazarded upon a chance, and an uncertain and contingent event."

Our statute defining the crime so charged is Rem. Comp. Stat., § 2469, being Laws of 1909, p. 955, § 217, and reads as follows:

"Every person who shall open, conduct, carry on or operate, whether as owner, manager, agent, dealer, clerk, or employee, and whether for hire or not, any gambling game or game of chance, played with cards, dice, or any other device, or any scheme or device whereby any money or property or any representative of either, may be bet, wagered or hazarded upon any chance, or any uncertain or contingent event, shall be a common gambler, and shall be punished by imprisonment in the state penitentiary for not more than five years."

The case proceeded to trial in the superior court, sitting with a jury, resulting in a verdict finding Smiley guilty as charged. Final judgment was accordingly rendered against him, from which he has appealed to this court.

344

It is contended that the evidence does not support the verdict finding Smiley guilty, and that the trial court should have so ruled as a matter of law, in response to his counsel's motion for a directed verdict finding him not guilty. Our reading of the evidence convinces us that it abundantly supports the conclusion that Smiley did, at the time and place charged, conduct and operate as "owner, agent, dealer, clerk and employee" a game of chance known as poker, whereby money or representative of money was paid and wagered by the players with each other; and that he, not being one of the individual players, took a portion of the money or representative thereof which was being so wagered.

One argument particularly stressed in this connection is that there is a failure of proof showing specifically in which of these named capacities Smiley acted. In prosecutions under this statute, the state is not required to specifically prove that the accused acted in any one of these specified capacities. It is enough for the state to prove to the satisfaction of the jury, beyond a reasonable doubt, facts warranting the conclusion that the accused acted in one or more of these specified capacities. The state is not required to make any election in that regard. Our late decision in *State v. Benbrook,* 159 Wash. 603, 294 Pac. 263, renders this plain.

We conclude that the evidence supports the verdict and judgment.

It is contended that the trial court erred to the prejudice of Smiley in its instruction to the jury, in part, as follows:

"You are further instructed that it is not necessary for the state to prove that the defendant directly played in or dealt in the game."

This contention seems to rest upon the assumption that the state was proceeding upon the theory that Smiley was conducting the game as dealer, and that the evidence showed he did not deal the cards. It is true that the state's witnesses in their testimony referred to him as the dealer, but they each described what he did, which was, in substance, that he managed the game; that he sold chips to the players, which became their representative of the money in their wagers; that he cut the cards; that he received back, as the game progressed, a certain portion of the wagered chips; and that it was also his function to settle disputes; though he did not actually shuffle or deal the cards, that being done in turn by the individual players. We fail to see wherein this instruction was erroneous. On the other hand, we think it correctly stated the law.

██ It is contended that the trial court erred to the prejudice of Smiley in instructing the jury in part as follows:

"You are instructed that the purpose of the statute under which this defendant is charged with being a common gambler is to suppress the maintenance and operation of gambling games."

It is complained that this instruction is erroneous in using the words "gambling games" instead of "gambling resorts;" our former decisions in *State v. Preston,* 49 Wash. 298, 95 Pac. 82, *State v. Burns,* 54 Wash. 113, 102 Pac. 886, and *State v. Gaasch,* 56 Wash. 381, 105 Pac. 817, being cited in support thereof. Each of those decisions was rendered in prosecutions under our gambling statute as it existed prior to the enactment in 1909 of the statute here in question, which prior statute was specifically directed against "gambling resorts." See Laws of 1903, p. 63. This statute

is not in terms directed exclusively against gambling resorts; but is directed against every person who promotes gambling in the manner prescribed, wherever such promotion may be carried on. The words "gambling games," as used in the instruction here complained of, manifestly referred to such gambling games against which this statute is directed, as plainly appears by other language used by the court in this same instruction.

It is contended that the trial court erred to the prejudice of Smiley in refusing to give an instruction requested by counsel, reading as follows:

"The court instructs the jury that, while it is a rule of law that a person may be convicted upon the uncorroborated testimony of accomplices, still a jury should always act upon such testimony with great care and caution. . . ."

This request was made upon the theory that the state's evidence against Smiley consisted wholly of the uncorroborated testimony of witnesses who were accomplices with him in the violation of this statute. The witnesses assumed to be such accomplices were only players in the game. Neither of them was in any sense acting in any of the capacities condemned by the above-quoted section of the statute.

We are inclined to the view that their testimony was not wholly uncorroborated. However that may be, they were not accomplices with Smiley. This, we think, is supported by abundant authority. *Prendergast v. State,* 41 Tex. Cr. App. 358, 57 S. W. 850; *State v. Wakely,* 43 Mont. 427, 117 Pac. 95; *People v. Bright,* 203 N. Y. 73, 96 N. E. 362, Ann. Cas. 1913A 771; *Simon v. State,* 149 Ark. 609, 233 S. W. 917; see, also, 16 C. J. 680, and numerous additional decisions there cited.

In *State v. Troiani,* 129 Wash. 228, 224 Pac. 388, we held that it was not error to refuse a cautionary in-

struction as to the testimony of an accomplice who was corroborated by other witnesses. Manifestly, therefore, it is not error, prejudicial to the accused, to refuse a cautionary instruction touching the testimony of accomplices when there is no testimony of any accomplice in the case, as here.

Prior to the commencement of the trial, the information referred to the place of the alleged commission of the offense as "117 Washington street," and referred to the game as "draw poker." At the commencement of the trial, the prosecuting attorney asked to be permitted to amend the information so that it would refer to the place of the game as "172 Washington street," and refer to the game as "poker." Counsel for Smiley objected to making such amendments to the information, which objection was overruled, and they were accordingly made. Counsel for Smiley did not specifically ask for a continuance, though he then said:

"We are willing that the amendment be made if the court wishes to give us a continuance. We recognize that the amendment is proper with a reasonable continuance."

No further reason or fact was advanced by counsel for Smiley supporting his right to a continuance. Rule of Practice IX, subd. 2 (140 Wash. xli), adopted by this court in pursuance of express statutory authority, reads:

"(2) At any time before or during trial the court may permit the amendment of an information and permit proof to be offered in support thereof, and if the defendant shows to the satisfaction of the court that he would thereby be misled, the court shall make such order as shall secure to the defendant full opportunity to defend." Rem. 1927 Sup., § 308-9.

It seems plain to us that the trial court did not abuse its discretion in permitting the prosecuting attorney to so amend the information and in directing the trial to immediately proceed.

Some other contentions are made in behalf of Smiley touching rulings of the trial judge made upon the introduction of evidence. These we have critically examined. Each of them is presented to us very briefly, and with but slight argument. We feel justified in disposing of them in an equally summary manner by saying that we find no merit in them.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, BEELER, and HERMAN, JJ., concur.

